# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

## PACER Cover Sheet
## for Electronically Filed Documents

Any data shown here are current as of  06/10/06      . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

**Case Title:**       Cindy L. Valdez

**Case Number:**    04-18343

---

### Document Information

**Description:**       Memorandum Opinion re: [13-1] Chapter 13 Plan .

Received on:        2005-11-16 15:14:34.000

**Date Filed:**        2005-11-16 00:00:00.000

**Date Entered On Docket:**  2005-11-16 00:00:00.000

---

### Filer Information

**Submitted By:**     Patti Hennessy

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date.  To confirm that nothing has changed since then, review the docket.**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:    CINDY VALDEZ,                                    No. 13-04-18343 MA

Debtor

## MEMORANDUM ON CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN

THIS MATTER is before the Court on confirmation of the Debtor's proposed Chapter 13 plan of reorganization (the "Plan"). Objections to the Plan were filed by the following parties: 1) New Mexico Taxation and Revenue Department ("NMTR"); 2) the Chapter 13 Trustee; and 3) Lupe and George Ramirez. NMTR withdrew its objection, and the Debtor resolved the objection of the Chapter 13 Trustee. Lupe and George Ramirez (together, the Ramirezes) objected to the Plan on grounds that the Plan was not filed in good faith and that it does not meet the best interest of creditors test outlined in 11 U.S.C. § 1325(a)(4).[1]

The Court held a final hearing on confirmation on August 19, 2005 and took the matter under advisement. Debtor was represented by Don Provencio. Lupe and George Ramirez were represented by Rob Treinen. After considering the testimony and evidence offered at the final hearing, and being otherwise sufficiently informed, the Court finds that the Debtor's conduct does not rise to the level of bad faith required to deny confirmation of her Chapter 13 plan, and that the plan meets the best interest of creditors test. The Court will, therefore, confirm the Debtor's Chapter 13 plan, provided that the Debtor complies with certain additional conditions.

---

[1]The Ramirezes later filed an Amended Objection to Chapter 13 Plan following the entry of the Court's order directing the Ramirezes to file an amendment to their objection that stated their objection with greater particularity.

1

In order to confirm a chapter 13 plan of reorganization, a debtor's plan must be proposed in good faith.[2] 11 U.S.C. § 1325(a)(3).[3] In addition, pursuant to 11 U.S.C. § 1325(a)(4), the plan must provide for a distribution to unsecured creditors that is not less than what those creditors would receive if the debtor's estate were liquidated under Chapter 7. 11 U.S.C. § 1325(a)(4).[4] This requirement is known as the "best interests of creditors" test. *See In re Roe,* 16 B.R. 706, 709 (Bankr.D.Kan. 1982) ("Section 1325(a)(4) is commonly called the 'best interests of creditors' test."). The Ramirezes contend that the Debtor has not filed her plan in good faith and that her plan fails to meet the best interests of creditors because she has not disclosed certain interests in real property and personal property.

## BACKGROUND AND FACTS

Debtor filed her Chapter 13 bankruptcy petition on November 16, 2004. In the years preceding her bankruptcy Debtor worked for 3L Land and Home from which she earned

---

[2]The plan must also meet the other five requirements outlined in 11 U.S.C. § 1325(a), but those factors are not at issue here.

[3]Section 1325(a)(3) provides:
> . . . the court shall confirm a plan if --
> > (3) the plan has been proposed in good faith ant not by any means forbidden by law. 11 U.S.C. § 1325(a)(3).

[4]That section provides:
> . . . the court shall confirm a plan if --
> > (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

> 11 U.S.C. § 1325(a)(4).

2

approximately 40,000.00 in 2002 and $43,000.00 in 2003. (Testimony of Ms. Valdez). Although she

helped manage this business, she did not own it. Debtor now works as a loan officer for AMC

Mortgage and earns net monthly income in the amount of $1,124.00 per month. (*See* Exhibit D-2;

Amended Schedule J). Nothing is deducted from her paycheck for payroll or social security taxes. *Id.*

Debtor also receives $166.00 per month as her share of income from a real estate contract and

$109.00 per month representing a tax refund arising from an earned income credit on account of her

disabled son.[5] *Id.* Debtor's Schedule J reflects disposable monthly income in the amount of $200.00

per month, which the Debtor proposes to contribute to the plan each month for thirty six months.

Along with her petition, she filed a statement certifying that she has no spouse. (Docket #3).

Before seeking bankruptcy relief, Debtor believed she had a common law marriage with Nash Valdez,

with whom she had been living since 1987. She changed her last name to Valdez

on her driver's license and on her social security card. She discovered that New Mexico does not

recognize common law marriage when she went to inquire about filing bankruptcy. She is no longer

living with Nash Valdez. At her creditor's meeting, Debtor denied that she had ever stated or claimed

in the past that she was married to Nash Valdez, and stated that he was her business partner.

Debtor's initial Schedule A , which was not filed until December 10, 2004 in accordance with

an order extending the time to file statements and schedules, lists an interest in 100 Cravens Lane,

Moriarty, New Mexico, subject to a Real Estate Contract, and that Debtor owns a 1/2 interest in this

---

[5]Debtor's son is twenty-three years old and requires constant care. Debtor is his legal
guardian. He does not live with the Debtor. Debtor receives SSI benefits that are used toward his
care.

property.   Debtor's Amended Schedule A, filed on May 20, 2005 changes this statement to reflect

that  "Debtor might have an equitable 1/2 interest in property with Co-debtor."   Debtor's initial

Schedule B failed to list a 1/2 interest in a Real Estate Contract with Nash Valdez.  Her Amended

Schedule B lists this interest with a value of $8,400.00.   Debtor amended her Schedule B to list this

interest once she began receiving monthly payments in the amount of $166.00 on the real estate

contract.

Debtor's Schedule B lists no checking, savings or other financial accounts.   Debtor's

Statement of Financial Affairs reports that she had a business checking/savings account with Wells

Fargo that was closed in August of 2004.  At the final hearing, bank account records from the Wells

Fargo account reflect that the account was closed out in July of 2004.  *See* Exhibit H.   An account

with Bank of America with a balance of $445.32 as of May 4, 2005 was also admitted into evidence.

*See* Exhibit G.  The Bank of America account does not appear in any of the Debtor's statements or

schedules.

The total amount of unsecured, non-priority claims set forth on Debtor's Schedule F is

$194,911.13, including debts attributable to medical expenses in the approximate amount of

$2,000.00, debts arising from credit card purchases in the approximate amount of $20,000.00, a debt

owing to the Ramirezes in the amount of $54,904.60, and a debt described as a "business expense" in

the amount of $85,380.00.  The Ramirezes filed a lawsuit against the Debtor based on a claim for fraud

and obtained a default judgment against the Debtor.

### STANDARDS

The debtor bears the burden of proving that a proposed plan of reorganization has been filed in

4

good faith. *See In re Davis,* 239 B.R. 573, 577 (10th Cir. BAP 1999) ("'The party who seeks a

discharge under Chapter 13 bears the burden of proving good faith. Best efforts under 11 U.S.C. §

1325(b), without more, are not enough.'") (quoting *Hardin v. Caldwell (In re Caldwell),* 895 F.2d

1123, 1126 (6th Cir. 1990)); *In re Hendricksen,* 131 B.R. 467, 471 (Bankr.N.D.Okla. 1991)

("Debtors, as proponents of the plan, have the burden of establishing that the plan has been proposed in

good faith.") (citation omitted). A finding of good faith must be made on a case by case basis,

considering the totality of circumstances. *Pioneer Bank v. Rasmussen (In re Rasmussen),* 888 F.2d

703, 704 (10th Cir. 1989) (per curiam). The Court is guided by the factors for determining a debtor's

good faith outlined in *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir. 1983). Those factors are:

> (1) the amount of the proposed payments and the amount of the debtor's surplus;
> (2) the debtor's employment history, ability to earn and likelihood of future increases in income;
> (3) the probable or expected duration of the plan;
> (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
> (5) the extent of preferential treatment between classes of creditors;
> (6) the extent to which secured claims are modified;
> (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;
> (8) the existence of special circumstances such as inordinate medical expenses;
> (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
> (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
> (11) the burden which the plan's administration would place upon the trustee.
>
> *Flygare,* 709 F.2d at 1347-1348 (quoting *United States v. Estus (In re Estus),* 695 F.2d 311, 317 (8th Cir. 1982)).

The best interest of creditors test contained in 11 U.S.C. § 1325(a)(4) is satisfied when the

value of property to be distributed to unsecured creditors under the proposed chapter 13 plan is not

less than the amount unsecured creditors would receive if the debtor's estate were liquidated under a hypothetical chapter 7 proceeding.   *See In re Dewey,* 237 B.R. 783, 788 (10th Cir. BAP 1999).

## DISCUSSION

The Ramirezes focus on inconsistencies and inaccuracies contained in the Debtor's statements and schedules and misstatements made at her creditor's meeting.   Specifically, the Ramirezes raise the following issues: 1) Debtor's statement  made at her creditor's meeting that she was not married to Nash Valdez; 2) her alleged failure to list certain interests in real and personal property in her statements and schedules; and 3) alleged misrepresentations as to income and expenses.[6]   With regard to Debtor's statements at her creditor's meeting in light of her prior statements and actions indicating that she held herself out to be married to Nash Valdez, the Court is not persuaded that such statements are particularly relevant to the question of whether Debtor filed her plan in good faith.  At the final hearing, Debtor indicated that she believed she had a common law marriage due to the fact that she lived with Nash Valdez for a long period of time, and that she did not discover that New Mexico does not recognized common law marriages until she sought bankruptcy counsel.  The Court is satisfied that her statements at her creditor's meeting do not indicate that she filed her plan in bad faith.   In addition, because she is not married to Nash Valdez and is not now living with him, Debtor was not required to list any income attributable to Nash Valdez in here statements and schedules.

The Ramirezes assert that Ms. Valdez failed to report interests in certain real properties,

---

[6]The Ramirezes' Amended Objection to Chapter 13 Plan also states that Debtor failed to list the claims of Sammi Hall, Addie Dile, and Len Lussier on Schedule F.  No evidence was presented in support of this allegation at the final hearing on confirmation.  The Court, therefore, will not consider this alleged inaccuracy in making its determination with regard to the Debtor's good faith.

6

including property known as Alta Vista and Ranchos Encantados.   At the final hearing on confirmation,

evidence that Debtor transferred or quitclaimed her interest in these properties was entered into

evidence.  *See* Exhibits C, D, and E.  Two of these conveyancing documents were executed in 1999,

and the quitclaim deed to Nash Valdez was executed on October 31, 2003 and recorded on

November 7, 2003, more than a year prior to the filing of the Debtor's petition on November 16,

2004.   Although Debtor did not list her interests in these properties in her statements and schedules,

none of these properties were titled in Debtor's name as of the date of the filing of the petition, and

Debtor has agreed as a condition of confirmation that she will assist the Chapter 13 Trustee if the

Chapter 13 Trustee attempts to recover any preferential transfers, that any recovery will be paid into

her Plan.   Based on the testimony and evidence, the Court is not persuaded that the Debtor intended to

mislead the Court.

Debtor initially failed to list her interest in a certain Real Estate Contract.  She later amended

her Schedule B to reflect that she holds a one-half interest in a Real Estate Contract with Nash Valdez.

She values her interest at $8,400.00.  *See* Exhibit D-1.  She also amended her Schedule G to reflect

the Real Estate Contract for certain property located at 1068 East 8th Street, and Schedule I to reflect

monthly income in the amount of $166.00 attributable to her interest in the Real Estate Contract.  *Id.*

At the confirmation hearing, the Debtor testified that she had not been receiving any income from the

Real Estate Contract, and that she amended her schedules to reflect her interest when she began to

receive such payments.  The Court finds this testimony satisfactory.

With regard to the checking and savings accounts, Debtor testified concerning certain activity in

the Wells Fargo Account that some of the deposits were attributable to tax refunds, some was

attributable to money she borrowed from her father and her sister, and that some represented

reimbursements from her son's trust account for funds she expended on behalf of her son for his

transportation needs.  Although she did not list this bank account on her Schedule B, she identified it as

a closed account in her statement of financial affairs.  Debtor testified that her failure to list the bank

account was not intentional, that she forgot the account existed because it was an account used for the

business which had been closed.   Debtor testified that the account at Bank of America (Exhibit G) is

the account she opened after filing her bankruptcy, and that it is the only bank account she presently

has.

The debt owing to the Ramirezes is based on a claim for fraud.  A debt based on fraud is not

dischargeable in a chapter 7 proceeding.  11 U.S.C. § 523(a)(2).  The fact that a debtor seeks to

discharge a debt through a Chapter 13 proceeding which would otherwise be non-dischargeable in a

Chapter 7 proceeding is relevant to the determination of good faith.  *Flygare*, 709 F.2d at 1347.

However, in this instance the Ramirezes' obtained their judgment against the Debtor by default.

Whether the debt to the Ramirezes is in fact based on fraud has not been adjudicated, and if this were a

Chapter 7 proceeding, the Debtor would have an opportunity to defend a non-dischargeability action in

the event the Ramirezes filed a complaint.[7]

The Court does not find, based on the fact that the Ramirezes may have a non-dischargeable claim, that

the Debtor has filed her plan in bad faith.

---

[7]*Cf.  In re Wald,* 208 B.R. 516, 560 (Bankr.N.D.Ala. 1997) (determining whether a judgment entered in state court has collateral estoppel effect in a non-dischargeability proceeding, and finding that issues must have been actually litigated before collateral estoppel will preclude further litigation).

"'[G]ood faith' means ordinary prudence in search of a fair chance." *Hendricksen,* 131 B.R. at 472.   Although the Debtor's testimony raises some questions regarding the facts and circumstances surrounding the income, including tax refunds she receives on account of her disabled son, the Court finds that the Debtor's behavior is not a bar to a finding of good faith.   She is not retaining significant assets at the expense of her creditors.   The business she helped manage is now defunct, and she has obtained employment in her area of experience.  She is responsible for the care of a disabled adult son for whom she has not received past-due child support.  She has not filed for bankruptcy relief in the past.[8]  She is contributing all of her disposable income to the Plan for a period of thirty-six months. While this is the minimum term for a plan allowed under the Bankruptcy Code, given the Debtor's present financial situation and the likelihood, given her education and experience, that her employment situation will remain constant for several years, the Court finds that a thirty-six month plan is acceptable. Based on all the facts and circumstances, the Court is not left with a firm impression that the Debtor has unfairly manipulated the Bankruptcy Code at the expense of her creditors, and concludes that the Debtor has met her burden of showing that her plan was filed in good faith.  *See Davis,* 239 B.R. at 577 (noting that "whether the debtor has unfairly manipulated the Bankruptcy Code" is a factor relevant to the determination of good faith) (citing *Rasmussen,* 888 F.2d at 794 n.3).

In applying the best interests of creditors test outlined in 11 U.S.C. § 1325(a)(4), the Court

---

[8]  A search of the Court's records shows that there are no other bankruptcy proceedings associated with this Debtor. *See* Fed.R.Evid. 201 (allowing court to take judicial notice, whether requested or not, of facts that are "not subject to reasonable dispute in that [they are] . . . capable of ready determination by resort to sources whose accuracy cannot reasonably be questioned."); Rule 9017 Fed.R.Bankr.P.  ("The Federal Rules of Evidence . . . apply in cases under the Code.")

9

must consider the value as of the effective date of the plan of the property to be distributed under the plan to unsecured creditors, taking into account the administrative expenses associated with a chapter 13 proceeding and compare that figure to the amount that would be paid to unsecured creditors if the debtor's estate were liquidated under a hypothetical chapter 7 proceeding, taking into account the anticipated administrative expenses associated with a chapter 7 liquidation. *Dewey,* 237 B.R. at 788. Debtor's plan proposes to contribute $200.00 per month for thirty-six months, for a total contribution of $7200.00. Estimated administrative expenses include attorneys' fees and the Chapter 13 trustee's fees. Based on Debtor's statements and schedules, as amended, there is insufficient non-exempt income from which any dividend could be paid to unsecured creditors if her estate were liquidated under Chapter 7. The Plan, therefore, satisfies the best interest of creditors test.

Based on the foregoing, the Court concludes that the Debtor has proposed a plan in good faith, and that the Plan meets the best interest of creditors test. At the final hearing on confirmation, Debtor agreed to the following modifications to her Plan: 1) all tax refunds received by the Debtor attributable to tax years 2005, 2006 and 2007 will be contributed to the Plan; 2) any proceeds of past due child support that the Debtor receives during the term of the Plan will be contributed to the Plan; 3) the Debtor will assist the trustee in the event the trustee determines to attempt to recover any real property or avoid any transfers for the benefit of creditors and contribute any recovery to the Plan; and 4) plan payments will be made pursuant to a wage withholding order.[9] Confirmation is conditioned upon these agreed modifications and shall be made a part of Debtor's confirmed Plan.

---

[9]A wage withholding order was entered on September 1, 2005. *See* Stipulated Order Directing Employer to Pay Trustee (Docket # 57).

10

As a further condition to confirmation, the Court will require that the Debtor file with the

Chapter 13 trustee a copy of her filed tax return for the following tax years: 2005, 2006, and 2007

within fifteen days of the date she files such returns.  The Chapter 13 Trustee should withhold her final

report and accounting pending receipt of the filed tax return for the 2007 tax year, even if such return is

not filed until after the thirty-sixth month of Debtor's plan.

This memorandum constitutes the Court's findings of fact and conclusions of law entered in

accordance with Rule 7052, Fed.R.Bankr.P.  An appropriate order will be entered.

_____

MARK B. McFEELEY
United States Bankruptcy Judge

I certify that on the date shown on the attached document verification, a true and correct copy of
the foregoing was either electronically transmitted, faxed, delivered or mailed to the listed counsel
and/or parties.

Donald Provencio
Attorney for Debtor
1721 Carlisle Blvd NE
Albuquerque,  NM  87110 -5621

Rob Treinen
Attorney for Lupe and George Ramirez
Ste 2000 E
300 Central Ave SW
Albuquerque, NM 87102

Kelley L. Skehen                                    _____
Chapter 13 Trustee                                 Patti G. Hennessy
625 Silver SW, Suite 350                           Law Clerk
Albuquerque, NM 87102                              (505) 348-2645

11